IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JESSICA PHIPPS**                                                                           **PLAINTIFF**

V.                             CASE NO. 5:21-CV-_____

**CULPEPPER COMPANY OF FAYETTEVILLE**                              **DEFENDANT**

## ORIGINAL COMPLAINT

COMES NOW Jessica Phipps, by and through her attorney Chris Burks of WH LAW, for her Complaint against Culpepper Company of Fayetteville, she does hereby state and allege as follows:

### I.  PRELIMINARY STATEMENTS

1. This is an employment discrimination action brought by Plaintiff Jessica Phipps pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), seeking declaratory judgment, compensatory damages, and costs, including a reasonable attorney's fee, as a result of her termination on the basis of discrimination due to her pregnancy status, and thus sex.

2. Plaintiff also brings this action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615, for violations of Plaintiff's federal employment rights under FMLA.

3. Defendant interfered with Plaintiff's federal employment rights under FMLA by failing to provide her with equivalent employment after her use of FMLA intermittent leave time due to her pregnancy-related health conditions.

4. The United States District Court for the Western District of Arkansas, Fayetteville Division, has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. §1331.

5. The acts complained of herein were committed and had their principal effect against Plaintiff within the Western District of Arkansas, Fayetteville Division; therefore, venue is proper within this District pursuant to 28 U.S.C. §1391.

## II.  THE PARTIES

6. Plaintiff Jessica Phipps is a resident and citizen of Washington County, Arkansas. At all times relevant to the allegations in this Complaint, Plaintiff was employed by the Defendant as an hourly-paid manager.

7. At all times relevant to this action, Defendant was Plaintiff's employer as defined by Title VII and the FMLA.

8. At all times material herein, Plaintiff was entitled to the rights, protections and benefits provided under Title VII and FMLA.

9. Defendant is a for-profit corporation that owns and operates Subway sandwich shops. It can be served by its registered agent, Sam Culpepper, at 4719 Butterfield Coach Rd., Springdale, AR 72764.

10. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under Title VII and the FLSA.

11. Defendant employed fifty (50) or more employees for each working day during each of twenty or more calendar workweeks in the year of the wrongful acts (2020).

12. Plaintiff worked in excess of 1,250 hours during the year 2019 and the year 2020.

## III. FACTUAL ALLEGATIONS

13. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

14. Plaintiff was employed by the Defendant as a store manager beginning in October 2017.

15. In mid-2020, Plaintiff became pregnant. As a result of her pregnancy, Plaintiff suffered from serious health conditions, including severe nausea and pelvic pain that substantially limited her major life activities but through a reasonable accommodation she could still do her job.

16. Due to doctors' appointments and the ongoing effects of these conditions, Plaintiff required leave time exceeding her available vacation and sick days.

17. On November 5, 2020, Plaintiff requested paperwork from her supervisor, Michelle Culpepper, to apply for intermittent FMLA leave to subsidize her hours and allow time for doctors' appointments or incapacity caused by her serious health conditions.

18. At the time the request was made, Plaintiff had risen from managing a single store to managing four separate Subway locations. Her duties included making schedules for each location; handling deposits; hiring, firing, and training employees; completing inventory; and ensuring coverage of the stores' scheduled shifts.

19. Plaintiff excelled in her position and had not received any write-ups prior to November 2020. Several employees from her stores were promoted and moved into management roles as a result of her training, and she was consistently provided with additional responsibilities.

20. In response to her FMLA request on November 5, 2020, the Plaintiff's supervisor, Michelle Culpepper, supplied the Plaintiff with a blank FMLA form generated by the U.S.

Department of Labor, and told her she could not use FMLA leave until after the birth of her child in February 2021.

21. Plaintiff responded that she was allowed to use FMLA leave intermittently during her pregnancy if she had doctors' appointments or was unable to work due to her severe health conditions.

22. Michelle Culpepper told Plaintiff that in order to use intermittent FMLA leave, the Plaintiff would need to supply a schedule of the days she was able to work, including the jobs she would complete and the hours a week she would be able to work.

23. Plaintiff provided that information to the Defendant and did not receive any additional communication from the Defendant regarding her request for FMLA leave.

24. On November 10, 2020, Plaintiff followed up with her supervisor regarding the documentation she would need to provide to apply for intermittent FMLA leave.

25. The Defendant told her that she was considered a "key employee" of their business, and as such, the Defendant would not approve her for FMLA unless bedrest or reduced work hours were ordered by her doctor or her child had been born.

26. The Defendant advised the Plaintiff to supply a doctor's note stating that she needed reduced hours or bedrest, and stated that if no note was provided, the Plaintiff would be expected to work her standard schedule of 44 hours a week, except for time off for her doctors' appointments.

27. On November 12, 2020, Plaintiff supplied the Defendant with a Certification of Health Care Provider for Employee's Serious Health Condition under the Family Medical Leave Act, completed by her obstetrician. Her doctor stated that she would need to be absent from work

on an intermittent basis an estimated one to two times a week for approximately 2-10 hours each time.

28. The Defendant subsequently provided the Plaintiff with a Notice of Eligibility & Rules and Responsibilities under the Family Medical Leave Act, which identified the Plaintiff as a "key employee" of the Defendant's business, and stated that they had not determined whether restoring the Plaintiff to employment would cause substantial and grievous economic harm to the Defendant.

29. Beginning November 5, 2020, when her initial FMLA request was made, the Plaintiff was on leave provided by the Families First Coronavirus Response Act, which allowed her to take time off due to the COVID exposure of her minor child. Due to COVID exposure from an employee in his classroom, her child was not permitted to return to his preschool until November 16, 2020.

30. Upon her return to work on November 18, 2020, the Plaintiff was immediately issued a warning by the Defendant for subpar work. This was her first write-up since her employment began in October 2017.

31. Though the write-up said it was due to subpar work over the past eight months, numerous items in the write-up pertained directly to the period that the Plaintiff was on FFCRA leave due to her minor child's COVID exposure. These included employees not following uniform and masks policies while the Plaintiff was on leave and deadlines being missed during the period that the Plaintiff was on leave.

32. On November 25, 2020, the Plaintiff was unable to work due to pregnancy complications. She called into work following the Defendant's call-in procedure, ensured her shifts were covered, and used intermittent FMLA leave for the first time.

33. On December 1, 2020 through December 7, 2020, the Plaintiff supplied a doctor's note excusing her from work due to her serious health conditions.

34. On December 7, 2020, an employee at one of the store locations managed by the Plaintiff tested positive for COVID-19. Other employees were experiencing COVID-19 symptoms and Plaintiff and Defendant communicated extensively about what employees had been exposed to the positive employee and who was required to quarantine.

35. On December 7, 2020, Michelle Culpepper, the Defendant's supervisor, informed the Plaintiff that she would be closing all three of the stores managed by the Plaintiff on a temporary basis, and that she would make the employees' schedules for these stores until the Plaintiff returned from her maternity leave.

36. The Defendant then prepared and circulated a work schedule for its locations that scheduled the Plaintiff for twelve hours of work, a drastic reduction from her normal schedule of forty-four hours.

37. When she asked her supervisor why her schedule was reduced, she was told "because you have been so ill recently" and that, due to the Plaintiff's illnesses and use of FMLA leave, the Defendant had been "left… in a lurch too often."

38. When Plaintiff asked if she was being demoted, the Defendant stated that she was not, since she was still receiving her same hourly rate of pay and that the Plaintiff could request additional shifts from the employees she managed if she wanted to work additional hours.

39. The Defendant informed Plaintiff that she would no longer be creating employee schedules, ensuring coverage of shifts, or handling deposits, many of her duties as a multi-unit manager.

40. Plaintiff informed the Defendant that her doctor had cleared her to return to her normal schedule of forty-four hours a week, that she would guarantee to work those hours to the best of her knowledge and foresight, and that she was capable of performing her typical duties in spite of her pregnancy and related health conditions.

41. Defendant responded that the reduction in Plaintiff's hours and job responsibilities would be "the new normal" and intended to make Plaintiff's job "less stressful for [her]."

42. On December 8, 2020, the Defendant terminated the Plaintiff due to "substandard job performance."

43. The Defendant's actions in reducing Plaintiff's work hours and removing her job responsibilities due to her status as a pregnant woman suffering from pregnancy-related complications was in violation of the Pregnancy Discrimination Amendment to Title VII.

44. The Defendant treated the Plaintiff substantially differently from other employees who took time off for non-pregnancy-related illnesses or medical conditions, as these other employees did not have their hours reduced or their responsibilities removed when they returned to work.

45. Defendant's actions toward Plaintiff upon her return to work resulted in Plaintiff receiving disparate treatment as the result of her pregnancy status.

## IV.     FIRST CAUSE OF ACTION
### (Violations of Title VII)

45.     Plaintiff repeats and re-alleges all previous paragraphs of her Complaint as though fully incorporated in this section.

46.     Plaintiff brings this action against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII").

47.     At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, 24 U.S.C. §2000e(f).

48.     At all relevant times, Defendant was an "employer" of Plaintiff within the meaning of Title VII, 24 U.S.C. §2000e(b).

49.     At all relevant times, Defendant has been and continues to be, an "industry affecting commerce" within the meaning of Title VII, 24 U.S.C. § 2000e(h).

50.     At all relevant times, Defendant has engaged in unlawful employment practices against Plaintiff within the meaning of Title VII, 24 U.S.C. § 2000e-2(a).

51.     Defendant, through their agents and employees, including Plaintiff's supervisors, intentionally and willfully discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment due to Plaintiff's pregnancy.

52.     Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

53.     Plaintiff's employment with Defendant was ended as a direct result of Defendant's intentional and willful discriminatory actions, policies, and procedures that adversely affect pregnant hourly-paid employees compared as to hourly-paid employees who are not pregnant.

54. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that she had been discriminated against by the Defendant on the basis of her sex (female).

55. Plaintiff received a right to sue letter and is within her ninety (90) days to file suit against Defendant.

56. As a result of Defendant's violation of Title VII, Plaintiff seeks injunctive relief, front pay, back pay, attorney's fees and costs, compensatory damages for any past and future out-of-pocket losses and for any emotional harm, and punitive damages.

### V.     SECOND CAUSE OF ACTION
### (Violations of FMLA)

57. Plaintiff repeats and re-alleges all previous paragraphs of her Complaint as though fully incorporated in this section.

58. Plaintiff was employed by the Defendant continuously from October 2017 until her termination in December 2020.

59. Upon her initial request for FMLA leave, the Defendant failed to timely supply the Plaintiff with her eligibility notice under FMLA, and repeatedly misstated to Plaintiff what FMLA leave was available for her to take, by stating she could not apply for intermittent leave until after her child was born.

60. The Defendant stated on Plaintiff's Notice of Eligibility & Rights and Responsibility under the Family Medical Leave Act form that she was a "key employee."

61. A "key employee" as defined by FMLA is a "salaried FMLA-eligible employee who is among the highest paid ten percent of all employees, both eligible and ineligible, within 75 miles of the worksite."

62. Plaintiff was not, at any time, a salaried employee. Even if she met the other classifications of a "key employee" as set out by FMLA, she should not have been considered or treated as a "key employee" since she was not salaried.

63. Since she was not a "key employee," Defendant was unable to claim that Plaintiff's use of FMLA leave caused them "substantial and grievous economic injury" or that they were unable or potentially unable to reinstate her to her former position upon her return to work.

64. Plaintiff timely supplied the Defendant with all requested documentation and communicated with them in advance when there was a *foreseeable* event (not a sudden illness or incapacitation due to her health conditions) that would cause her take intermittent FMLA leave.

65. After her use of FMLA intermittent leave for serious health conditions related to her pregnancy, Defendant reduced the Plaintiff's work schedule from forty-four (44) hours a week to twelve (12) hours a week, and removed many of her job responsibilities as a multi-unit manager, assigning them to other employees.

66. The Defendant's actions in reducing the Plaintiff's work hours from forty-four (44) hours a week to twelve (12) hours a week had the effect of drastically reducing the Plaintiff's salary, as she was an hourly-paid employee.

67. The Defendant's actions in reducing hours and removing many of the Plaintiff's duties as a multi-unit store manager was a violation of her rights under FMLA by failing to return her to a position that was equivalent in pay, benefits, and other employment terms and conditions.

68. The Defendant's dismissal of Plaintiff was a retaliatory firing related to discrimination against Plaintiff for both her use of FMLA leave and her pregnancy status.

69. As a result of Defendant's violation of FMLA, Plaintiff has suffered damages including, but not limited to: loss of employment, lost wages and salary, benefits, interest, and attorney's fees and costs.

70. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to and seeks an additional amount as liquidated damages equal to the sum of her lost wages or salary, benefits or other compensation denied or lost to her by reason of Defendant's violations of FMLA, plus any interest she is entitled to for these causes, because Defendant's violations were not in good faith and Defendant had no reasonable grounds for believing that its actions were not in violation of §2615 of FMLA.

## VI.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Jessica Phipps respectfully prays that Defendant be summoned to appear and to answer herein; for the entry of a declaratory judgment in favor of Plaintiff, decreeing that her federally protected rights have been violated; that this Court enter judgment in her favor against Defendant Culpepper Company of Fayetteville, for an amount in excess of $75,000.00, plus interest and liquidated damages as that term is defined in 29 U.S.C. §2617 and punitive damages under Title VII, a reasonable attorney's fee and costs; and other relief as this Court deems necessary, just, and proper, including an appropriate award of front pay.

        Respectfully submitted,

**Jessica Phipps, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:    *Chris Burks*
       Chris Burks (ABN: 2010207)
       chris@wh.law